**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------x
IN RE: FOSAMAX PRODUCTS LIABILITY   :         MDL No. 1789
LITIGATION                          :
_____x
This Document Relates to            :         1:06-MD-1789 (JFK)
                                              1:07-cv-2442 (JFK)
Debra Flores v. Merck & Co., Inc.,  :         1:07-cv-9564 (JFK)
1:07-cv-2442 (JFK)                            1:07-cv-9485 (JFK)
                                    :         1:07-cv-3792 (JFK)
Carrie Smith, et al. v. Merck &
Co., Inc., et al., 1:07-cv-9564(JFK):
                                              MEMORANDUM OPINION
Nancy Anderson v. Brite Dental      :             & ORDER
Corp., et al., 1:07-cv-9485 (JFK)
                                    :
Dianne Walla v. Merck & Co., Inc.,
et al., 1:07-cv-3792 (JFK)          :
------------------------------------x
```

**JOHN F. KEENAN, United States District Judge:**

### INTRODUCTION

These four actions, along with hundreds of others in which plaintiffs allege to have developed osteonecrosis of the jaw ("ONJ") from ingesting defendant Merck & Co., Inc.'s ("Merck") prescription osteoporosis drug, Fosamax, have been consolidated before this Court for pretrial coordination. Each of the four actions was filed in state court, removed to federal court on the basis of diversity jurisdiction, and transferred to this multidistrict litigation ("MDL") docket. Currently pending are motions to remand these actions back to their state courts of origin on the ground that diversity jurisdiction is lacking.

For the reasons that follow, three of the motions to remand are granted and one is denied.

**BACKGROUND**

On December 26, 2007, the Court set a briefing schedule for remand motions in cases that have been removed from state court and transferred to this MDL. <u>See</u> Case Management Order No. 14. Remand motions have been filed in the following four cases:

a. **The New Jersey action:** <u>Debra Flores</u>, 1:07-cv-2442 (JFK)

On January 25, 2007, Virginia resident Debra Flores brought suit in Superior Court of New Jersey, Law Division, Camden County, against Merck, a New Jersey corporation, and two non-Virginia defendants. The case was removed to the United States District Court for the District of New Jersey on February 6, 2007, and transferred to this MDL on March 27, 2007.

In her motion to remand, Flores contends that 28 U.S.C. § 1441(b) prohibits removal because Merck is a citizen of New Jersey, the state in which the action was brought. Section 1441(b) permits removal on the basis of diversity jurisdiction only if none of the parties "properly joined and served as defendants" is a citizen of the forum state. Merck asserts that removal was proper under § 1441(b) because, at the time that this case was removed, Merck had been joined in the action but had not yet been served.

2

b. **The California action**: <u>Carrie Smith, et al.</u>, 1:07-cv-9564 (JFK)

On July 13, 2007, plaintiff Carrie Smith, a resident of California, and seventeen non-California plaintiffs jointly filed a complaint in the Superior Court of the State of California for the County of Los Angeles.  The complaint alleges various state law causes of action against Merck and McKesson Corporation ("McKesson"), a corporation having its principal place of business in California.  On July 18, 2007, defendants removed the case to the United States District Court for the Central District of California, despite the conceded non-diversity of plaintiff Smith and defendant McKesson.  The case was ordered transferred to this MDL on October 16, 2007.

Plaintiffs move to remand the case because complete diversity of citizenship is lacking.  Plaintiffs also seek an award of the costs and attorney's fees that they have incurred as a result of the removal, pursuant to Title 28 U.S.C. § 1447(c).  Merck opposes remand on two theories.  First, Merck asserts that the non-diverse defendant McKesson was fraudulently joined in the action, so that its presence should be disregarded for the purpose of determining whether diversity jurisdiction exists.  Second, Merck claims that the non-diverse plaintiff Smith was misjoined with the non-California plaintiffs and that the Court should sever her claims and retain jurisdiction over the remainder of the case.

c. **The Florida action:** <u>Nancy Anderson</u>, 1:07-cv-9485 (JFK)

On May 4, 2007, Florida resident Nancy Anderson filed this action in the Circuit Court of the Sixth Judicial Circuit, State of Florida, Pasco County, Civil Division. Her complaint asserts various causes of actions against Merck and medical malpractice claims against three individual Florida dentists and their employer, Brite Dental Corporation ("Brite Dental"), a Florida corporation. The case was removed to the United States District Court for the Middle District of Florida on June 4, 2007 and ordered transferred to this MDL on October 17, 2007.

Anderson moves to remand because (1) her complaint alleges that damages exceed $15,000, not $75,000, therefore the amount in controversy requirement is not met; and (2) complete diversity is lacking. She also requests costs and attorney's fees pursuant to 28 U.S.C. § 1447(c). Merck asserts that removal was proper because the amount in controversy, in fact, likely exceeds $75,000, and the Florida dentists and their Florida employer are fraudulently joined.

d. **The Illinois action:** <u>Dianne Walla</u>, 1:07-cv-3792(JFK)

On March 28, 2007, Illinois resident Dianne Walla filed suit in the Circuit Court of Cook County, Illinois, Law Division, against Merck and two Illinois pharmacies, Walgreen Company ("Walgreen's") and K Mart Corporation of Illinois ("K Mart"). On April 4, 2007, Merck removed the case to the United

States District Court for the Northern District of Illinois. The case subsequently was transferred to these MDL proceedings. Walla moves to remand based on the non-diversity of citizenship between herself and the pharmacy defendants. Merck claims that that the pharmacy defendants are fraudulently joined.

## APPLICABLE LAW

Under the removal statute, defendants may remove an action from state court if it originally could have been brought in federal court. 28 U.S.C. 1441(a). When removal is based on diversity jurisdiction, defendants must show that there is complete diversity of citizenship between plaintiffs and defendants and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." Somlyo v. J. Lu-Rob Enter., Inc., 932 F.2d 1043, 1045-46 (2d Cir. 1991).[1]

Two caveats to the removability of diversity cases are implicated by these remand motions. First, even if the requirements of diversity jurisdiction are met, the statute does not allow removal if any of the parties "properly joined and

_____

[1] MDL transferee courts apply the interpretations of federal law of the circuit in which they sit. See Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993).

served" as defendants are citizens of the forum state. 28 U.S.C. § 1441(b). Second, even if complete diversity is destroyed by the presence of a non-diverse party, removal is nonetheless proper if that party was fraudulently joined in the action.

### 1. Forum Defendant Rule

As mentioned, § 1441(b) permits the removal of diversity cases "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Courts almost uniformly have read this to allow removal where an in-sate defendant has not been served by the time the removal petition is filed. See Ott v. Consol. Freightways Corp., 213 F. Supp. 2d 662, 665 & n.3 (S.D. Miss. 2002) (collecting cases). [2] "[T]he language of § 1441(b) makes plain that its prohibition on removal applies only where a defendant who has been 'properly joined and served' is a resident of the forum state." Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314 F. Supp. 2d 177, 180 (S.D.N.Y. 2003) (emphasis in original); see also Yocham v. Novartis Pharm.

---

[2] The few cases reaching the opposite conclusion generally conflate section 1441(b)'s forum defendant rule with the rule that a non-diverse party, whether served or unserved, destroys complete diversity. See, e.g., Oxendine v. Merck and Co., Inc., 236 F. Supp. 2d 517, 524 (D. Md. 2002); Grizzly Mountain Aviation, Inc. v. McTurbine, Inc., No. 08 Civ. 87, 2008 WL 938571, at *3 n.5 (S.D. Tex. Apr. 4, 2008). Cf. Ott, 213 F. Supp. 2d at 663-665 (distinguishing between the presence of an unserved in-state defendant, which does not affect removability under section 1441(b), and the presence of an unserved non-diverse defendant, which destroys complete diversity and is a jurisdictional defect); Clawson v. FedEx Ground Package System, Inc., 451 F. Supp. 2d 731, 736 (D. Md. 2006) (same).

Corp., No. 07 Civ. 1810 (JBS), 2007 WL 2318493, at *3 (D.N.J. Aug. 13, 2007).

### 2. Fraudulent Joinder

The doctrine of fraudulent joinder prevents a plaintiff from joining a non-diverse defendant "with no real connection to the controversy" to defeat federal jurisdiction. Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 460-61 (2d Cir. 1998). If a defendant has been fraudulently joined, that defendant's citizenship is overlooked for the purpose of determining whether complete diversity exists.

One claiming fraudulent joinder in the Second Circuit "bears a heavy burden." Id. at 461. He "must demonstrate, by clear and convincing evidence, either that [1] there has been outright fraud committed in the plaintiff's pleadings, or [2] that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." Id. On the latter ground, "[j]oinder will be considered fraudulent when it is established that there can be no recovery [against the defendant] under the law of the state on the cause alleged." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 207 (2d Cir. 2001) (internal quotation marks omitted, alteration in original)). In determining whether any possibility of recovery exists, the court may look beyond the pleadings and consider evidence submitted by the parties.

However, the court lends more lenient scrutiny to plaintiff's claims than it would if it were ruling on a motion to dismiss. See Kuperstein v. Hoffman-Laroche, Inc., 457 F. Supp. 2d 467, 471 (S.D.N.Y. 2006). "[A]ll factual and legal issues must be resolved in favor of the plaintiff." Pampillonia, 138 F.3d at 461.

Merck cites In re Rezulin Prods. Liab. Litig., 133 F. Supp. 2d 272 (S.D.N.Y. 2001), which determined that the "no possibility" standard requires the defendant to show that there is "no reasonable possibility" of recovery or "no reasonable basis to predict liability." Id. at 280 n.4. Rezulin observed that the "no possibility" language cannot be taken too literally. Otherwise, a remand would be required in every case because there is always a remote possibility that a state might later reverse its law to allow claims that it had previously rejected.[3] Id. Rezulin's interpretation of the "no possibility" standard seems apt to the extent that it excludes the possibility of a state later reversing settled law or recognizing new, frivolous claims. Insofar as Rezulin suggests

---

[3] Rezulin also relied on the fact that one of the five cases cited with approval in a footnote to Pampillonia used the "no reasonable basis to predict liability" test. See Pampillonia, 138 F.3d at 461 n.3. Yet that footnote merely remarked that other circuits had adopted "similar tests," and three of the five cited cases employed the "no possibility" language. Id. (citing Madison v.. Vintage Petroleum, Inc., 114 F.3d 514, 516 (5th Cir. 1997); Hoosier Energy Rural Elec. Co-op., Inc. v. Amoco Tax Leasing IV Corp., 34 F.3d 1310, 1315 (7th Cir. 1994); and Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989)).

a more lenient standard, I do not regard it as an accurate statement of the law in this circuit. There is no reason to believe that the Court of Appeals "inadvertently use[d] the language it did" when it articulated the fraudulent joinder standard. Arseneault v. Congoleum, No. 01 Civ. 10657 (LMM), 2002 WL 472256, at *5 n.4 (S.D.N.Y Mar. 26, 2002) (rejecting Rezulin's interpretation and "adher[ing] to the Pampillonia formulation"). Indeed, the court has continued to use the "no possibility" language in cases following Pampillonia. See Briarpatch Ltd., LP v. Phoenix Pictures, Inc., 373 F.3d 296, 302 (2d Cir. 2004); Whitaker, 261 F.3d at 207. Most district courts in this circuit have applied the "no possibility" standard rather strictly. See, e.g., Kuperstein, 457 F. Supp. 2d at 471 ("If state case law or legislation removes all reasonable possibility that the plaintiff would be permitted to litigate the claim, then remand must be denied. If the answer is doubtful, that doubt must be resolved in favor of the plaintiff and the case must be remanded."); Nemazee v. Premier, Inc., 232 F. Supp. 2d 172, 178 (S.D.N.Y. 2002) ("Any possibility of recovery, even if slim, militates against a finding of fraudulent joinder; only where there is 'no possibility' of recovery is such a finding warranted."); Dexter v. A C & S Inc., No. 02 Civ. 6522 (RCC), 2003 WL 22725461, at *2 (S.D.N.Y. Nov. 18, 2003) (noting that "[r]ecent cases from this district

have strictly applied the standard"); <u>Stan Winston Creatures</u>,
2003 WL 1907978 at *4 (requiring defendants to show that it is
"legally impossible" for plaintiff to recover).

In addition to the two forms of fraudulent joinder
mentioned above —outright fraud in the pleadings and the joinder
of a party against whom recovery is impossible— there is a
potential third variant called "fraudulent misjoinder." <u>See</u> <u>Fed.</u>
<u>Ins. Co. v. Tyco Int'l Ltd.</u>, 422 F. Supp. 2d 357, 378 (S.D.N.Y.
2006); Charles Alan Wright, Arthur R. Miller and Mary K. Wright,
14B Federal Practice and Procedure § 3723 (3d ed.). Recognized
in an Eleventh Circuit case, <u>Tapscott v. MS Dealer Serv. Corp.</u>,
77 F.3d 1353, 1360 (11th Cir. 1996), <u>abrogated on other grounds</u>
<u>by</u> <u>Cohen v. Office Depot</u>, 204 F.3d 1069 (11th Cir. 2000),
fraudulent misjoinder occurs when a plaintiff attempts to defeat
removal by misjoining the unrelated claims of non-diverse
parties. In other words, the claims asserted by or against the
non-diverse party who is joined lack a sufficient factual nexus
to the case to support joinder under applicable rules of
procedure. <u>See</u> 14B Wright, Miller & Cooper § 3723. <u>Tapscott</u>
emphasized that its holding was not that "mere misjoinder is
fraudulent joinder," but only that the misjoinder committed in
that case was "so egregious as to constitute fraudulent

joinder."[4] 77 F.3d at 1360. Where fraudulent misjoinder is found, courts sever the misjoined party pursuant to Federal Rule of Civil Procedure 21, thereby preserving diversity jurisdiction over the remainder of the action.

The Second Circuit has not had occasion to consider whether, as Tapscott held, procedural misjoinder can constitute fraudulent joinder. District courts appear to be equally divided on the question. The principle underlying traditional fraudulent joinder would seem to apply with equal force in cases of egregious misjoinder: "[A] plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining . . . parties with no real connection with the controversy." Pampillonia, 138 F.3d at 460-61. As Tapscott observed, "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." 77 F.3d at 1360. In either instance, a plaintiff attempts to defeat removal by joining parties with no real connection to plaintiff's claims.

---

[4] In Tapscott, one group of plaintiffs seeking to represent a class sued a group of defendants for statutory fraud arising from the sale of automobile service contracts. See id. at 1355. Another group of plaintiffs representing a separate putative class sued a different group of defendants for statutory fraud arising from the sale of extended service contracts in connection with the sale of retail products. Plaintiffs conceded that the defendants were improperly joined, but argued that "a misjoinder, no matter how egregious, is not fraudulent joinder." Id.

Many courts have noted the difficulty of applying _Tapscott_'s egregiousness standard to determine when procedural misjoinder rises to the level of fraudulent joinder. _See, e.g._, _A. Kraus & Son v. Benjamin Moore & Co._, No. 05 Civ. 5487 (ARR) (VVP), 2006 WL 1582193, at *5 (E.D.N.Y. June 7, 2006). Several have proposed a standard analogous to the one governing traditional claims of fraudulent joinder. _See_ _Fed. Ins. Co._, 422 F. Supp. 2d at 379-80; _Conk v. Richards & O'Neil, LLP_, 77 F. Supp. 2d 956, 971 (S.D. Ind. 1999). Under this framework, a defendant claiming fraudulent misjoinder would have to show (1) that there is outright fraud in the pleading of the facts supporting joinder or (2) that there is no possibility, based on the pleadings, that the parties are properly joined under applicable joinder rules. _See_ _Fed. Ins. Co._, 422 F. Supp. 2d at 379. And because this inquiry looks to whether the non-diverse party was misjoined in state court before removal, the majority of cases have held that state rather than federal joinder rules apply. _See, e.g._, _id._ at 381-87; _Osborn v. Metro. Life Ins. Co._, 341 F. Supp. 2d 1123, 1128 (N.D. Cal. 2004); _In re Diet Drugs_, 294 F. Supp. 2d 667, 673-74 (E.D. Pa. 2003); _Jamison v. Purdue Pharma Co._, 251 F. Supp. 2d 1315, 1321 n.6 (S.D. Miss. 2003); _Conk_, 77 F. Supp. 2d at 971; _HVAC Sales, Inc. v. Zurich Am. Ins. Group_, No. 04 Civ. 03615, 2005 WL 2216950, at *6 n.13 (N.D. Cal.

July 25, 2005); <u>Asher v. Minn. Mining and Mfg. Co.</u>, No. A 04 Civ. 522, 2005 WL 1593941, at *6 (E.D. Ky. June 30, 2005).

**ANALYSIS**

**A. The New Jersey action**

There is no dispute that this case originally could have been brought in federal court under diversity jurisdiction. Flores acknowledges that complete diversity exists; she is a citizen of Virginia and the defendants named in the complaint are citizens of New Jersey, Ohio and Delaware. In addition, it is uncontested that the amount in controversy exceeds $75,000.

Flores argues that the case is not removable under section 1441(b) because Merck is a citizen of New Jersey, the forum state. Merck responds that it was not served before this case was removed. Plaintiff does not claim that she served Merck or any other in-state defendant before removal. As discussed above, the plain language of section 1441(b) allows removal unless an in-state defendant has been "properly joined <u>and</u> served." 28 U.S.C. § 1441(b) (emphasis added). Therefore, the case was removable and Flores' motion to remand is DENIED.

**B. The California action**

Plaintiffs seek remand based on the non-diversity of plaintiff Smith and defendant McKesson, both California

citizens.[5]  Merck opposes on the grounds that (1) McKesson has been fraudulently joined because there is no possibility of recovery against it on the claims alleged; and (2) plaintiff Smith has been fraudulently misjoined with the other, non-California plaintiffs.

    1. <u>Fraudulent Joinder</u>

Plaintiffs' complaint alleges that McKesson distributed the Fosamax ingested by them and seeks to hold it liable for strict products liability for failure to warn (Count I), breach of implied warranty (Count IV), and unjust enrichment (Count VIII).  Merck claims that recovery against McKesson is impossible for two reasons.  First, it argues that the complaint contains insufficient factual allegations to allow recovery against McKesson on the claims asserted.  Second, Merck argues that California law does not impose a duty to warn on pharmaceutical distributors.  These arguments are addressed in turn below.

    a. *Factual Possibility*

Merck does not really dispute that the complaint alleges each element of a failure to warn claim against McKesson.  Merck's objection is directed instead at the general

---

[5] Plaintiffs do not argue that McKesson's citizenship in the forum state makes the case non-removable under section 1441(b). Merck represents that McKesson was not served prior to removal, and plaintiffs have not contested this representation.  As discussed

nature of the complaint's allegation that McKesson distributed the Fosamax ingested by plaintiffs. Paragraph 4 of the complaint states that "Upon information and belief, Defendant McKesson marketed, sold and distributed the Fosamax ingested by Plaintiffs by distributing Fosamax to the pharmacy or drug store where each Plaintiff purchased their Fosamax." This conclusory assertion of fact, Merck argues, is too hollow to support plaintiffs' claim that McKesson caused their injuries.

The adequacy of the complaint's factual allegations is a question of state law. Under California pleading standards, a complaint must contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language." Cal. Code Civ. Pro. § 425.10(a)(1). This requires "only general allegations of ultimate fact. The plaintiff need not plead evidentiary facts supporting the allegation of ultimate fact. A pleading is adequate so long as it apprises the defendant of the factual basis for the plaintiff's claim." McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1469-1470 (Cal. Ct. App. 2006) (internal citations omitted); see also Davaloo v. State Farm Ins. Co., 135 Cal. App. 4th 409, 415 (Cal. Ct. App. 2005); Lim v. The.TV Corp. Int'l, 99 Cal. App. 4th 684, 689-690 (Cal. Ct. App. 2002). Clearly, paragraph 4 of the

---

supra, section 1441(b) prohibits removal only when an in-state defendant has been "joined and served."

complaint apprises McKesson that the claims against it are based on its alleged distribution of the Fosamax ingested by plaintiffs. This allegation provides a sufficient basis to state a claim against McKesson in California state court.

The Court may look beyond the pleadings to determine whether recovery against McKesson is factually possible. To this end, Merck has submitted declarations from its principals stating that it "has at least 100 different distributors that it uses to distribute Merck products, including Fosamax, nationwide." (Decl. of Jeffrey Rhodes ¶ 2.). The fact that Merck uses many distributors is not clear and convincing evidence that McKesson could not possibly have distributed the Fosamax taken by plaintiffs.

Merck also cites a California district court decision finding McKesson to be fraudulently joined in a products liability case. Aronis v. Merck & Co., Inc., No. S 05 Civ. 0486 (WBS) (DAD), 2005 WL 5518485, at *1 (E.D. Cal. May 3, 2005). In that case, plaintiff's complaint merely alleged that "McKesson is a major distributor of the drug;" "plaintiff [made] no allegation that McKesson ever handled the specific pills that were allegedly the cause of her injuries." Id. By contrast, plaintiffs in this case have alleged that McKesson distributed the Fosamax ingested by them. Merck argues that merely alleging this is not enough, that plaintiffs must provide supporting

evidence.  However, it is Merck's burden to prove, with clear and convincing evidence, that McKesson's joinder was fraudulent. Plaintiffs would not have to provide evidence in order to survive a motion to dismiss.  And "[i]f it can be determined that the complaint would likely survive a motion to dismiss in state court, the inquiry ends and remand is appropriate." Kuperstein, 457 F. Supp. 2d at 471.  Plaintiffs' allegation that McKesson distributed the Fosamax in question provides a sufficient factual foundation for possible recovery on their strict liability claim.

b. *Legal Possibility*

It is settled under California law that pharmaceutical drug manufacturers can be held strictly liable for failing to adequately warn of risks that are known or reasonably knowable. Carlin v. Superior Court, 13 Cal. 4th 1104 (Cal. 1996).  "The general rule [in California] is that strict liability for failure to provide adequate warnings runs to distributors as well as manufacturers." Martin v. Merck & Co., Inc., No. S-05-750 (LKK) (PAN), 2005 WL 1984483, at *3 (E.D. Cal. Aug. 15, 2005) (citing Anderson v. Owens-Corning Fiberglas Corp., 53 Cal. 3d 987, 994 (Cal. 1991)).  Merck has cited no California statute or decision excepting pharmaceutical distributors from this general rule.  Although "[t]he California Supreme Court has recognized an exception in strict liability for pharmacists in

prescription drug cases," <u>Maher v. Novartis Pharm. Corp.</u>, No. 07 CV 852, 2007 WL 2330713, at *3 (S.D. Cal. Aug. 13, 2007) (citing <u>Murphy v. E.R. Squibb & Sons, Inc.</u>, 40 Cal. 3d 672, 681 (Cal. 1985)), "it has not addressed liability in prescription drug cases for distributors and other potential defendants in the 'commercial chain.'" <u>Id.</u> (citing <u>Daly v. General Motors Corp.</u>, 20 Cal. 3d 725, 739 (Cal. 1978).

Merck argues that McKesson cannot be held strictly liable for two reasons. First, it claims that California's learned intermediary doctrine precludes recovery. That doctrine, which is based on comment k to § 402A of the Restatement (Second) of Torts, provides that manufacturers of prescription drugs shall not be held strictly liable if they adequately warn prescribing physicians of the risks associated with the drug. <u>See</u> <u>Carlin v. Superior Court</u>, 13 Cal. 4th 1104 (Cal. 1996); <u>Stevens v. Parke, Davis & Co.</u>, 9 Cal. 3d 51, 65 (Cal. 1973) ("In the case of medical prescriptions, if adequate warning of potential dangers of a drug has been given to doctors, there is no duty by the drug manufacturer to insure that the warning reaches the doctor's patient for whom the drug is prescribed."). Yet plaintiffs have alleged that physicians were not adequately warned about the risk of ONJ associated with Fosamax. Merck has not cited any California authority or explained how, if plaintiffs were to prove this allegation, the

learned intermediary doctrine would operate to preclude recovery against the distributor McKesson. Accord Martin v. Merck & Co., Inc., 2005 WL 1984483 at *3 (finding that a strict liability claim against McKesson for distributing Vioxx is "not presently precluded under California law," and that California's learned intermediary defense is inapplicable where plaintiff alleged that the manufacturer failed to adequately warn doctors of the danger of the drug).[6]

Second, Merck argues that a distributor like McKesson cannot be held strictly liable for failure to warn under California law because federal law prohibits manufacturers and distributors from modifying the FDA-approved warnings provided on the drug's label. California's Supreme Court has rejected the argument that compliance with FDA regulations exempts a drug-maker from liability for failure to warn. Carlin, 13 Cal. 4th at 1113 ("We are unpersuaded by [defendant's] argument that a strict liability standard for failure to warn about known or

---

[6] Merck cites twin unpublished decisions from one California district court denying remand because "there is no possibility that plaintiffs could prove a cause action against McKesson, an entity which distributed this FDA-approved medication to pharmacists in California. Pursuant to comment k of the Restatement (Second) of Torts Section 402A and California law following comment k, a distributor of a prescription drug is not subject to strict liability." Barlow v. Warner-Lambert Co., No. 03 CV 1647 R (RZx) (C.D. Cal. Apr. 28, 2003; Skinner v. Warner-Lambert Co., No. 03 CV 1643 R (RZx) (C.D. Cal. Apr. 28, 2003). The one-and-a-half page decisions provide no explanation of how comment k to the Restatement applied, nor do they cite any California cases following the comment to preclude strict liability against a pharmaceutical distributor. This analysis is not persuasive.

reasonably scientifically knowable risks from prescription drugs is inconsistent with federal regulatory policy."); Stevens, 9 Cal. 3d at 65 ("[M]ere compliance with regulations or directives as to warnings, such as those issued by the United States Food and Drug Administration here, may not be sufficient to immunize the manufacturer or supplier of the drug from liability."); Martin, 2005 WL 1984483 at *4 (noting that "[t]he California Supreme Court has rejected this argument and explained that strict liability for failure to warn is not necessarily inconsistent with FDA policy," and finding that claim against McKesson was not preempted). Merck has pointed to no United States Supreme Court decision interpreting federal law to preempt such a state law claim.[7] Merck argues that the preemption analysis differs for pharmaceutical distributors, but cites no decision —California or federal— drawing this distinction. Merck has not demonstrated that a federal preemption defense will certainly preclude recovery against McKesson if the action were remanded.

---

[7] In a recent 4-4 per curiam decision, the U.S. Supreme Court affirmed a Second Circuit decision which held that FDA approval of pharmaceutical drugs does not preempt products liability actions based on traditional state law duties between drug manufacturers and their consumers. Warner-Lambert Co., LLC v. Kent, 128 S.Ct. 1168 (Mar. 3, 2008) aff'g 467 F.3d 85 (2d Cir. 2006). Cf. Riegel v. Medtronic, Inc., 128 S.Ct. 999 (Feb. 20, 2008) (holding that the preemption clause of the Food, Drug and Cosmetic Act ("FDCA") relating to medical devices, 21 U.S.C. § 360k(a), expressly preempts state claims alleging flaws in the design or labeling of devices that have obtained pre-market approval from the FDA).

In sum, because Merck has failed to show the absence of a possibility of recovery on the strict products liability claim alleged against McKesson, the Court finds that McKesson is not fraudulently joined in the action and that its presence destroys complete diversity.

2.  <u>Fraudulent Misjoinder</u>

Merck also contends that the claims of the eighteen plaintiffs in this action have been misjoined, and that California plaintiff Smith was fraudulently misjoined in order to create non-diversity with defendant McKesson and to defeat the defendants' right of removal.  Merck requests that Smith's claims be severed from the action, which would create complete diversity.  Assuming without deciding that the doctrine of fraudulent misjoinder recognized in <u>Tapscott</u> applies in this circuit, Merck has not established that Smith has been egregiously misjoined under California law.

California's rule governing the joinder of plaintiffs provides in pertinent part:

> All persons may join in one action as plaintiffs if . . . [t]hey assert any right to relief jointly, severally, or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

Cal. Code Civ. P. § 378(a).  As Merck points out, the language of § 378(a) is virtually identical to the federal rule. <u>See</u> Fed.

R. Civ. P. 20(a)(1). However, California's joinder rules are interpreted more liberally. See Osborn v. Metro. Life Ins. Co., 341 F. Supp. 2d 1123, 1128 (E.D. Cal. 2004). "The requirement that the right to relief arise from the 'same transaction or series of transactions' is construed broadly. It is sufficient if there is any factual relationship between the claims joined (and this tends to merge with the 'common question' requirement []).″ Judge Robert E. Jones, et al., Cal. Prac. Guide Civ. Pro. Before Trial Ch. 2-C, 2:222-23 (2008); State Farm Fire & Cas. Co. v. Superior Court, 45 Cal. App. 4th 1093, 1113 (Cal. App. Ct. 1996) (same), abrogated on other grounds by Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163 (Cal. 1999).

In paragraph 2 of their complaint, plaintiffs assert that joinder is proper under California law because:

> Each Plaintiff, listed in the chart below, was prescribed and ingested Fosamax and thereafter suffered personal injury thereby[.] Plaintiffs are proper parties for a single action under California's permissive joinder statute . . . in that each was injured through the same transactions, occurrences or series of transactions or occurrences—the manufacture, marketing, distribution and sale of Fosamax—and common questions of law or fact exist as to all Plaintiffs[.]

(Compl. ¶ 2 (citations omitted)).[8] Whether plaintiffs' claims bear a sufficient factual relationship to support joinder under California law is somewhat close. Compare Anaya v. Superior

---

[8] The referenced chart displays the names of the eighteen plaintiffs and the twelve different states in which they reside.

Court, 160 Cal. App. 3d 228 (Cal. Ct. App. 1984) (claims of 200 employees alleging injury from exposure to hazardous substance at workplace over many years were properly joined, even though all were not exposed on the same occasions), and State Farm, 45 Cal. App. 4th at 1113 (after earthquake, policyholders who entered into separate policies with defendant insurer and alleged "systematic practice to deceive" were properly joined as plaintiffs because "those allegations clearly reflect a claim containing common facts central to the alleged deception"), with Farmers Ins. Exchange v. Adams, 170 Cal. App. 3d 712, 723 (Cal. Ct. 1985) (after storm, plaintiff insurer misjoined policyholders in a declaratory judgment action because "it was improper to label the damage herein to innumerable types of structures, occurring at widely separated locations within the state, resulting from a myriad of causes, and under various conditions as the 'same transaction or occurrence' within the meaning of [California joinder rules]").  The Court cannot conclude that plaintiffs' claims were egregiously misjoined under California law.

Merck has cited several pharmaceutical products liability cases in which federal courts have held that, under federal rules, these claims cannot be joined because they do not arise from the same transaction or series of transactions. See McNaughton v. Merck & Co., Inc., No. 04 Civ. 8297 (LAP)

(S.D.N.Y. Dec. 17, 2004); <u>In re Rezulin Prods. Liab. Litig.</u>, 168 F. Supp. 2d 136, 147-48 (S.D.N.Y 2001) (finding the claims fraudulently misjoined, but applying federal rules without explanation and determining that mere misjoinder constituted fraudulent joinder).   Yet Merck has not cited any case suggesting that plaintiffs' claims are misjoined under the more permissive California rule.   Therefore, assuming that the doctrine of fraudulent misjoinder applies in this circuit, it has not been established in this case.   The presence of the California plaintiff destroys complete diversity.

Accordingly, plaintiffs' motion to remand is GRANTED.

   3.   <u>Costs and Attorneys Fees</u>

Plaintiffs in this action request an award of their costs and attorney's fees incurred as a result of the improper removal.   Title 28 U.S.C. § 1447(c) provides that "an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."   The Court finds that an award of costs and expenses is not in order because defendants' fraudulent joinder arguments in support of removal were not frivolous. <u>See</u> <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 136 (2005) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively

reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.").

## C. The Florida action

Florida plaintiff Nancy Anderson seeks a remand on the grounds that (1) the amount in controversy requirement is not satisfied; and (2) her claims against the Florida dentists and their employer, Brite Dental (together, the "Dental Defendants") are not fraudulently misjoined with her claims against Merck.

### 1. Amount in Controversy

Anderson's complaint alleges that this "is an action for damages in excess of $15,000," (Compl. at ¶ 1), which meets the jurisdictional threshold of the Florida circuit court where this case originally was filed. In her motion to remand, she asserts that the amount in controversy requirement for federal diversity jurisdiction is not established. However, she concedes that her "claim likely exceeds $75,000" and that she "believes the claim will exceed $75,000." (Pl.'s Mem. at 6.) These concessions establish Merck's "burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296 (2d Cir. 2000).

### 2. Fraudulent Misjoinder

The facts giving rise to Anderson's claims against the Dental Defendants and Merck, as pleaded in her complaint, are as

follows. Anderson used Fosamax from May 1996 until the present time. (Compl. at 34.) From 2003 through September 2004, she received routine dental care at Brite Dental. (Id. ¶¶ 3, 13.) In October 2004, she visited a dentist employed by Brite Dental to have a tooth removed. (Id. ¶ 17.) The area of the extraction became infected and failed to heal over the next several months, despite antiobiotic treatment prescribed during follow-up visits with the Brite dentists. (Id. ¶¶ 18-29.) In February 2005, she was diagnosed with osteomyelitis of the mandible and underwent surgeries that included the aggressive debridement and biopsy of her mandible. (Id. ¶¶ 29-33.) Her medical reports indicated areas of necrotic and ischemic bone. (Id. ¶ 32.) She alleges that she has suffered from osteomyelitis of the mandible and ONJ. (Id. ¶ 33.)

Anderson alleges that Merck knew or should have known that the effects of Fosamax "combine to create a compromised vascular supply in [the mandibles]. As a result, a minor injury or disease can turn into a non-healing wound. That in turn can progress to widespread necrosis (bone death) and osteomyelitis (inflammation of the bone marrow)." (Comp. ¶ 41.) She alleges that her injuries were caused by Merck's failure to warn of these dangers, (Id. ¶¶ 53-54.) and has asserted against Merck claims of negligence (Count V), strict liability (Count VI), breach of express and implied warranties (Counts VII, VIII), and

fraudulent misrepresentation and concealment (Counts IX, X).

Plaintiff also asserts claims of medical malpractice against Brite Dental and three dentists employed by it (the "Dental Defendants"). (Counts I-IV.) She alleges that they failed to properly diagnose or treat her infection after extracting her tooth. (Id. ¶¶ 72, 75, 77, 79.)

Merck argues that the claims against it are misjoined with those against the non-diverse Dental Defendants, because the claims do not arise from the same transaction, occurrence or series of transactions or occurrences.

All of the claims asserted by Anderson arise from her suffering of jaw-related injuries beginning in October 2004. She alleges that Merck's failure to adequately warn that taking Fosamax created a risk of these injuries caused their onset, and that the Dental Defendants' failure to properly diagnose and treat the injuries caused their aggravation. Merck's contention that these claims do not arise from the same occurrence because the defendants contributed to the harm in different ways is specious. The argument for fraudulent misjoinder is frivolous. Plaintiff's motion for remand is GRANTED. She is awarded her costs and attorney's fees pursuant to 28 U.S.C. § 1447(c).

D.  **The Illinois action**

The complaint filed by Illinois plaintiff Diane Walla asserts claims of negligence (Count II), strict liability (Count

IV) and breach of implied warranty (Count VII) against the Illinois pharmacy defendants, Walgreen's and K-mart. Merck contends that recovery is impossible on these claims and, therefore, the pharmacy defendants are fraudulently joined.

The fate of plaintiff's strict liability claim against the pharmacy defendants is uncertain, necessitating a remand. "Illinois has adopted the strict-liability formula set forth in section 402A of the Restatement (Second) of Torts" and "imposes strict liability on anyone who sells any product in a defective condition unreasonably dangerous to consumers, users, or their property." <u>Miller v. Rinker Boat Co., Inc.</u>, 352 815 N.E. 2d 1219, 1230 (Ill. App. Ct. 2004) (citing <u>Lamkin v. Towner</u>, 563 N.E. 2d 449, 457 (Ill. 1990)). The Court is not aware of any Illinois authority exempting pharmacies from strict liability for the drugs they sell.[9] <u>Cf.</u> <u>Jones v. Irvin</u>, 602 F. Supp. 399, 400 (S.D. Ill. 1985) (a federal court, sitting in diversity and

---

[9] The court is aware of 735 Ill. Comp. Stat. 5/2-621, the so-called "seller's exception" to products liability under Illinois law, which provides that a non-manufacturing defendant who has not contributed to an alleged defect in a product is entitled to automatic dismissal upon proof of the identity of the product's manufacturer. <u>See</u> <u>Yount v. Shashek</u>, 472 F. Supp. 2d 1055, 1065 (S.D. Ill. 2006); <u>Cherry v. Siemans Med. Sys., Inc.</u>, 565 N.E.2d 215, 218 (Ill. App. Ct. 1990). Federal courts in Illinois have held that this statute is not an appropriate basis upon which to find non-manufacturer defendants fraudulently joined, because the statute allows such defendants to be reinstated under certain circumstances at any time before judgment. <u>See</u> <u>LaRoe v. Cassens & Sons, Inc.</u>, 472 F. Supp. 2d 1041, 1050 (S.D. Ill. 2006); <u>Phillips v. Howmedica Osteonics Corp.</u>, No. 07 Civ. 833 (GPM), 2007 WL 4441228, at * 6 (S.D. Ill. Dec. 17, 2007); <u>Mills v. Martin & Bayley, Inc.</u>, No. 05 Civ. 888 (GPM), 2007 WL 2789431, at *5 n. 1 (S.D. Ill. Sept. 21, 2007).

applying Illinois law, noted in dicta that decisions of other state courts have held that a pharmacist is not subject to strict products liability). Merck cites <u>Leesley v. West</u>, 518 N.E. 2d 758, (Ill. App. Ct. 1988), but that case did not adopt an exemption for pharmacies. Rather, it extended to pharmacies the protection afforded to drug manufacturers by the learned intermediary doctrine. <u>Id.</u> at 761-62. As discussed above, the learned intermediary doctrine is based on comment k to section 402A of the Restatement (Second) of Torts. It holds that, if the manufacturer provides adequate warnings about the drug's known dangerous propensities to the prescribing physician, then the drug is not unreasonably dangerous and the manufacturer owes no duty to directly warn the consumer. <u>See id.</u> (citing <u>Kirk v. Michael Reese Hosp. and Med. Ctr.</u>, 513 N.E. 2d 387 (Ill. 1987); Restatement (Second) of Torts § 402A, comment k (1965)). The manufacturer remains strictly liable, however, if it fails to provide adequate warnings to the prescribing physician. <u>Hansen v. Baxter Healthcare Corp.</u>, 764 N.E. 2d 35, 43 (Ill. 2002) ("Doctors who have not been <u>sufficiently</u> warned of the harmful effects of a drug cannot be considered 'learned intermediaries.'").

The learned intermediary doctrine was extended to protect pharmacists because "it would be illogical and inequitable under a strict liability theory to impose a duty on

the pharmacist with respect to a prescription drug that is not imposed on the drug's manufacturer." Leesley, 518 N.E. 2d at 762. Yet it is unclear under Illinois law whether the learned intermediary doctrine shields pharmacies from strict liability where, as alleged here, the prescribing physician does not receive adequate warnings from the manufacturer. Cases in the Southern District of Illinois repeatedly have held that it does not, that the applicability of the learned intermediary defense to manufacturers and pharmacies alike is a question of fact, and that pharmacies are not fraudulently joined in strict products liability cases. Riddle v. Merck & Co., Inc., No. 06 Civ. 172 (GPM), 2006 WL 1064070, at *3 (S.D. Ill. Apr. 21, 2006) ("Assuming . . . that Merck has properly asserted the learned intermediary doctrine as the basis for its claim that Walgreens and Osco Drugs have been fraudulently joined, the Court finds nevertheless that the applicability of the doctrine presents questions of fact that must be resolved in state court. Under Illinois law, the learned intermediary doctrine is a shield against liability only where the manufacturer of a prescription drug has given adequate warning of known dangerous propensities of the drug to physicians. . . . Correspondingly, the learned intermediary doctrine is not a bar to liability where a manufacturer never communicated an adequate warning to physicians."); Brooks v. Merck & Co., Inc., 443 F. Supp. 2d 994,

1003 (S.D. Ill. 2006) (concluding that "[i]n this case it is plain that the learned intermediary doctrine applies exactly the same way as between both Merck and Walgreens. If the Court holds that Merck gave adequate warning to physicians, thus absolving Walgreens of liability, Merck is absolved of liability as well. Thus, the learned intermediary doctrine clearly is an issue that goes not to the Court's jurisdiction but to the merits of Plaintiff's claims for relief."); <u>Smith v. Merck & Co., Inc.</u>, 472 F. Supp. 2d 1096, 1099 (S.D. Ill. 2007); <u>McNichols v Johnson & Johnson</u>, 461 F. Supp. 2d 736 (S.D. Ill 2006); <u>Rutherford v Merck & Co, Inc.</u>, 428 F. Supp. 2d 842 (S.D. Ill. 2006); <u>Nicol v. Merck & Co., Inc.</u>, No. 06 Civ. 926 (GPM), 2006 WL 3804887, at *2 (S.D. Ill. Dec. 22, 2006). Given this interpretation of Illinois law, I cannot say that recovery against the pharmacy defendants on the strict liability count is impossible.[10] Therefore, plaintiff's motion to remand is GRANTED.

## CONCLUSION

For the foregoing reasons, the motion to remand filed by Debra Flores in 1:07-cv-2442 (JFK) is DENIED. The motion filed by Carrie Smith et al. in 1:07-cv-9564 (JFK) is GRANTED and the

---

[10] Accordingly, the Court need not address whether recovery is possible on the negligence or breach of implied warranty claims. <u>Cf.</u> <u>Happel v. Wal-Mart Stores, Inc.</u>, 766 N.E. 2d 1118 (Ill. 2002) (explaining that, under a negligence theory, a pharmacist's duty is limited by the learned intermediary doctrine, and that "pharmacists have no generalized duty to warn patients of potential adverse reactions to prescription drugs <u>absent some special circumstances</u> . . ." (emphasis in original)).

case REMANDED to the Superior Court of Los Angeles County, State of California. The motion filed by Nancy Anderson in 1:07-cv-9485 (JFK) is GRANTED and the case REMANDED to the Circuit Court of the Sixth Judicial Circuit, Pasco County, Civil Division, State of Florida, and Merck is ORDERED to pay costs and attorney's fees incurred as a result of the removal, pursuant to 28 U.S.C. § 1447(c). The motion filed by Dianne Walla in 1:07-cv-3792 (JFK) is GRANTED, and that case is REMANDED to the Circuit Court of Cook County, Law Division, State of Illinois.

**SO ORDERED.**

**Dated:**       **New York, New York**
              **July 28, 2008**

                                    **JOHN F. KEENAN**
                              **United States District Judge**