

RECEIVED
JAN 2 7 2009
U.S.D.C. S.D. N.Y.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RONNA GREENE

      Plaintiff,

Civil Action No.: 1:06-cv-09449

vs.

MASTER FILE: 1:06-MD-1789-JFK

MERCK & CO., INC.;
PROCTOR & GAMBLE
PHARMACEUTICALS, INC.;
SANOFI-AVENTIS US, INC.; and
SANOFI-AVENTIS US, L.L.C.

      Defendants.

## AMENDED COMPLAINT

Plaintiff, Ronna Greene, through her undersigned attorneys Levin, Papantonio et al.,

sues Defendants Merck & Co., Inc. ("Merck"), Proctor & Gamble Pharmaceuticals, Inc.

("P&GP"), and sanofi-aventis, US, Inc., sanofi-aventis, US, L.L.C. ( referred to collectively

as "Aventis") and alleges as follows:

### I. JURISDICTION AND VENUE

1.     This Court has jurisdiction pursuant to 28 U.S.C. §§1332, as complete diversity

     exists between Plaintiff and Defendants. The amount in controversy, exclusive of

     interest and costs, exceeds $75,000.

2.     Venue is proper within this district pursuant to 28 U.S.C. §1391, as a substantial

     number of the events, actions, or omissions giving rise to the Plaintiff's claims

     occurred in this district. At all times relevant to this matter, Defendants conducted

substantial business in this district.

## II. **PARTIES**

3.    Plaintiff Ronna Grenee was born January 5, 1943. At all relevant times Plaintiff was

a resident of Ft Myers, Florida. Plaintiff used the drug ACTONEL from at least July

2004 through March 2005, and she used the drug FOSAMAX from at least June

2005 through November 2005.

4.    At all times mentioned herein, Merck was and is a New Jersey corporation with its

principal place of business at One Merck Drive, Whitehouse Station, New Jersey

08889-0100.

5.    At all times mentioned herein, P&GP was and is an Ohio corporation with a principal

place of business at One Proctor Gamble Plaza, Cincinnati, Ohio 45202-3393.

6.    At all times mentioned herein, Defendant sanofi-aventis, US, Inc. and its wholly

owned subsidiary, sanofi-aventis, US, L.L.C. were and are Delaware corporations,

with a principal place of business at 55 Corporate Drive, Bridgewater, New Jersey

08807.

7.    Merck, P&GP, and Aventis (referred to collectively as "Defendants") were at all

relevant times authorized to conduct business in the State of Florida.

8.    Defendants regularly transacted business in the State of Florida and continue to do

so.

## III. **SUMMARY OF THE CASE**

9.    Merck, through its agents, servants, employees and apparent agents was the designer,

-2-

manufacturer, marketer, distributor and seller of FOSAMAX, a bisphosphonate drug used primarily to mitigate or reverse the effects of osteoporosis.

10. Merck, either directly or through its agents, apparent agents, servants or employees, at all relevant times, sold and distributed FOSAMAX in the State of Florida for the treatment or prevention of osteoporosis, Paget's disease and other off-label uses.

11. Merck derives substantial revenue from pharmaceutical products used or consumed in the State of Florida and expected, or should have expected, that its business activities could or would have consequences within the State of Florida.

12. Defendants P&GP and Aventis through their agents, servants, employees and apparent agents designed, manufactured, marketed, distributed and sold ACTONEL, another bisphosphonate drug also used primarily to treat or prevent osteoporosis.

13. P&GP and Aventis, either directly or through their agents, apparent agents, servants or employees, at all relevant times, sold and distributed ACTONEL in the State of Florida for the treatment or prevention of osteoporosis.

14. As a result of the defective nature of both FOSAMAX and ACTONEL, persons who were prescribed and ingested these products, including Plaintiff Ronna Greene, have suffered and may continue to suffer severe and permanent personal injuries, including osteonecrosis of the jaw.

15. Defendants concealed their knowledge of the unreasonably dangerous risks associated with FOSAMAX and ACTONEL from Plaintiff Ronna Greene, other consumers, and the medical community.

-3-

16. Defendants failed to conduct adequate and sufficient post-marketing surveillance of FOSAMAX and ACTONEL after they began marketing, advertising, distributing, and selling these drugs.

17. As a result of Defendants' actions and inaction, Plaintiff Ronna Greene was injured due to his ingestion of FOSAMAX and ACTONEL, which has caused and will continue to cause Plaintiff's various injuries and damages. Plaintiff accordingly seeks compensatory damages.

## IV. FACTUAL BACKGROUND

18. At all relevant times Merck was responsible for, or involved in, designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX.

19. In September 1995, the United States Food and Drug Administration ("FDA") approved Merck's compound alendronate, which is marketed by Merck as FOSAMAX, for various uses, including the treatment of osteoporosis and Paget's Disease.

20. At all relevant times P&GP and Aventis were responsible for, or involved in, designing, manufacturing, marketing, advertising, distributing, and selling ACTONEL.

21. The FDA approved the compound risidronate, which is marketed by P&GP and Aventis as ACTONEL, for the prevention and treatment of osteoporosis.

22. FOSAMAX and ACTONEL fall within a class of drugs known as bisphosphonates. Bisphosphonates are used for treating bone conditions such as osteoporosis and

Paget's disease. Other drugs within this class such as Aredia and Zometa are also used as chemotherapy and as adjunct chemotherapy but are not indicated for use in non-cancerous conditions such as osteoporosis.

23. There are two classes of bisphosphonates: the N-containing (nitrogenous) and non-N-containing (non-nitrogenous) bisphosphonates. The nitrogenous bisphophonates include the following: pamidronate (Aredia); ibandronate (Bondronat); risidronate (ACTONEL) and alendronate (FOSAMAX). The non-nitrogenous bisphosphonates include the following: etridonate (Didronel); clodronate (Bonefos and Loron); and tiludronate (Skelid). Alendronate and risidronate, like the others, contains a nitrogen atom, whereas etridonate, clodronate, and tiludronate do not. The PDRs for FOSAMAX and ACTONEL confirm that the respective molecules in each compound contains a nitrogen atom.

24. Throughout the 1990s and 2000s, medical articles and studies appeared reporting the frequent and common occurrence of osteonecrosis of the jaw within the nitrogenous bisphosphonates used for chemotherapy. As with its reported and acknowledged side effects concerning irritation, erosion, and inflammation of the upper gastrointestinal tract, Defendants knew or should have know that FOSAMAX and ACTONEL, as a nitrogenous bisphosphonates, shared similar adverse event profiles to the other drugs within this specific subclass of bisphosphonates (i.e., those containing nitrogen).

25. Defendants knew and or should have known that bisphosphonates, including FOSAMAX and ACTONEL, inhibit endothelial cell function. Similarly, Defendants

knew or should have known that Bisphosponates also inhibit vascularization of the affected area and induce ischemic changes specific to patients mandibles (lower jaws) and maxillae (upper jaws) and that these ischemic changes appear to be cumulative in nature.

26. Defendants also knew or should have known that these factors combine to create a compromised vascular supply in the affected area. As a result, a minor injury or disease can turning into a non-healing wound. That in turn can progress to widespread necrosis (bone death) and osteomyelitis (inflammation of bone marrow).

27. Dentists are now being advised by state dental associations to refrain from using any invasive procedure (such as drilling a cavity) for any patient on FOSAMAX or ACTONEL.

28. Once the osteonecrosis begins and becomes symptomatic, it is very difficult to treat and is not reversible.

29. Shortly after Merck began selling FOSAMAX, reports of osteonecrosis of the jaw and other dental complications among users began surfacing, indicating that FOSAMAX shared the class effects of the other nitrogenous bisphosphonates.

30. Shortly thereafter, reports of osteonecrosis of the jaw began surfacing in patients using ACTONEL as well, again indicating this was a class effect.

31. Despite this knowledge, Defendants failed to implement further study  risk of osteonecrosis of the jaw relative to their respective products FOSAMAX and ACTONEL.

32. Rather than evaluating and verifying the safety of FOSAMAX with respect to osteonecrosis of the jaw, Merck proposed further uses of FOSAMAX, such as FOSAMAX-D, and sought to extend the exclusivity period of FOSAMAX through 2018.

33. Osteonecrosis of the jaw is a serious medical event and can result in severe disability and death.

34. Since FOSAMAX and ACTONEL were released, the FDA has received a number of reports osteonecrosis of the jaw among users of each of these products.

35. On August 25, 2004, the United States Food & Drug Administration ("FDA") posted its ODS Postmarketing Safety Review on bisphosphonates - - specifically pamidronate (Aredia), zoledronic acid (Zometa), risedronate (ACTONEL), and alendronate (FOSAMAX). This was an epidemiologic review of the FDA adverse events database conducted by the FDA's Division of Drug Risk Evaluation.

36. As a result of the FDA Review, the FDA observed that the risk of osteonecrosis of the jaw was not confined to bisphosphonates used for chemotherapy. The FDA's review indicated that the osteonecrosis of the jaw was a class effect which specifically extended to the oral bisphosphonates FOSAMAX and ACTONEL.

37. As a result, the FDA recommended and stated that Defendants should amend the labeling for their respective drugs to specifically warn about the risk of osteonecrosis of the jaw. Defendants have refused to accede to the FDA's request and, to this day, still does not warn of the risk of osteonecrosis of the jaw in its FOSAMAX labeling.

38. Rather than warn patients, and despite knowledge known by Defendants about increased risk of osteonecrosis of the jaw in patients using FOSAMAX or ACTONEL, Defendants continue to defend their respective products and minimize unfavorable findings.

39. FOSAMAX is one of Merck's top selling drugs. Averaging more than $3 billion a year in sales.

40. Likewise, ACTONEL is one of P&GP's top selling drugs.

41. Consumers, including Plaintiff Ronna Greene, who have used FOSAMAX or ACTONEL for the treatment or prevention of osteoporosis, have several alternative safer products available to them.

42. Defendants knew of the significant risk of dental and oral complications caused by ingestion of FOSAMAX and ACTONEL, but Defendants did not adequately and sufficiently warn consumers, including Plaintiff Ronna Greene, or the medical community, of such risks.

43. Plaintiff Ronna Greene was prescribed and began taking FOSAMAX by at least June 2005.

44. Plaintiff used FOSAMAX as prescribed and in a foreseeable manner.

45. Plaintiff was prescribed and began taking ACTONEL in July 2004.

46. Plaintiff used ACTONEL as prescribed and in a foreseeable manner

47. As a direct and proximate result of using FOSAMAX and ACTONEL, Plaintiff suffered severe osteonecrosis of the jaw.

48. Because ACTONEL and FOSAMAX both have a long half-life of 10 years or more, their negative effect on the jaw bone's ability to heal is cumulative, and each drug contributed to Plaintiff Ronna Greene's injuries.

49. Plaintiff, as a direct and proximate result of using FOSAMAX and ACTONEL, suffered severe mental and physical pain and suffering and has sustained permanent injuries and emotional distress.

50. Plaintiff used FOSAMAX which had been provided to her in a condition that was substantially the same as the condition in which it was manufactured and sold.

51. Plaintiff used ACTONEL which had been provided to her in a condition that was substantially the same as the condition in which it was manufactured and sold.

52. Plaintiff would not have used FOSAMAX had Merck properly disclosed the risks associated with the drug. Alternatively, Plaintiff would have known the precursor events of osteonecrosis of the jaw and would have been able to avoid the clinical manifestation of the symptoms as they currently exist.

53. Plaintiff would not have used ACTONEL had P&GP and Aventis properly disclosed the risks associated with the drug. Alternatively, Plaintiff would have known the precursor events of osteonecrosis of the jaw and would have been able to avoid the clinical manifestation of the symptoms as they currently exist.

54. Merck, through its affirmative misrepresentations and omissions, actively concealed from Plaintiff and her physicians the true and significant risks associated with taking FOSAMAX.

55. P&GP and Aventis, through their affirmative misrepresentations and omissions, actively concealed from Plaintiff and her physicians the true and significant risks associated with taking ACTONEL. The running of any applicable statute of limitations has been tolled by reason of Defendants' fraudulent concealment.

56. As a result of Defendants' actions, Plaintiff and her prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of Defendants' acts, omissions, and misrepresentations.

## COUNTS

## COUNT I: NEGLIGENCE

57. Plaintiff re-alleges paragraphs 1-56 the above as if fully set forth herein.

58. Merck designed, tested, developed, manufactured, labeled, marketed, distributed and sold FOSAMAX.

59. Merck had a duty to exercise reasonable care in designing, testing, developing, manufacturing, labeling, marketing, distributing and selling FOSAMAX, including a duty to assure that users, like Plaintiff, did not suffer unreasonable adverse side effects, such as osteonecrosis of the jaw.

60. Merck failed to exercise reasonable care in designing, testing, developing, manufacturing, labeling, marketing, distributing and selling FOSAMAX in that Merck knew or should have known that FOSAMAX created an unreasonable risk of

-10-

osteonecrosis of the jaw.

61. Merck was negligent in designing, testing, developing, manufacturing, labeling, marketing, distributing and selling FOSAMAX.

62. As the proximate cause and result of Merck's negligence, Plaintiff was injured.

63. P&GP and Aventis designed, tested, developed, manufactured, labeled, marketed, distributed and sold ACTONEL.

64. P&GP and Aventis had a duty to exercise reasonable care in designing, testing, developing, manufacturing, labeling, marketing, distributing and selling ACTONEL, including a duty to assure that users, like Plaintiff, did not suffer unreasonable adverse side effects, such as osteonecrosis of the jaw.

65. P&GP and Aventis failed to exercise reasonable care in designing, testing, developing, manufacturing, labeling, marketing, distributing and selling ACTONEL in that P&GP and Aventis knew or should have known that ACTONEL created an unreasonable risk of osteonecrosis of the jaw.

66. P&GP and Aventis were negligent in designing, testing, developing, manufacturing, labeling, marketing, distributing and selling ACTONEL.

67. As the proximate cause and result of P&GP and Aventis' negligence, Plaintiff was injured.

## COUNT II: STRICT LIABILITY

68. Plaintiff re-alleges paragraphs 1-67 above as if fully set forth herein.

69. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through

29 of the Complaint as if they were set forth here in full.

70.     Merck designed, tested, developed, manufactured, labeled, marketed, distributed and
        sold FOSAMAX.

71.     FOSAMAX as designed, manufactured and sold by Merck was defective in design
        or formulation in that it was unreasonably dangerous.

72.     FOSAMAX as designed, manufactured and sold by Merck was defective in design
        or formulation in that its foreseeable risks exceeded the benefits associated with the
        design or formulation.

73.     FOSAMAX as designed, manufactured and sold by Merck was defective due to
        inadequate warnings because Merck knew or should have known that the product
        created a risk of harm to consumers.

74.     FOSAMAX as designed, manufactured and sold by Merck was defective due to
        inadequate testing.

75.     As the proximate cause and result of the defective condition of FOSAMAX as
        designed, manufactured and sold by Merck, Plaintiff was injured.

76.     P&GP and Aventis designed, tested, developed, manufactured, labeled, marketed,
        distributed and sold ACTONEL.

77.     ACTONEL as designed, manufactured and sold by P&GP and Aventis was defective
        in design or formulation in that it was unreasonably dangerous.

78.     ACTONEL as designed, manufactured and sold by P&GP and Aventis was defective
        in design or formulation in that its foreseeable risks exceeded the benefits associated

with the design or formulation.

79. ACTONEL as designed, manufactured and sold by P&GP and Aventis was defective due to inadequate warnings because P&GP and Aventis knew or should have known that the product created a risk of harm to consumers.

80. ACTONEL as designed, manufactured and sold by P&GP and Aventis was defective due to inadequate testing.

81. As the proximate cause and result of the defective condition of ACTONEL as designed, manufactured and sold by P&GP and Aventis, Plaintiff was injured.

## COUNT III: BREACH OF EXPRESS WARRANTY

82. Plaintiff re-alleges paragraphs 1-81 above as if fully set forth herein.

83. Merck expressly warranted, by and through statements made by Merck or its authorized agents, that FOSAMAX was safe, effective, and fit for its intended use.

84. Plaintiff, and her physicians, relied on the skill, judgment and representations of Merck.

85. FOSAMAX did not conform to Merck's express warranties in that it was not safe and fit for its intended use because it caused serious adverse side effects, including osteonecrosis of the jaw.

86. As the proximate cause and result of Merck's breach of its express warranties, Plaintiff was injured.

87. P&GP and Aventis expressly warranted, by and through statements made by P&GP and Aventis or their authorized agents, that ACTONEL was safe, effective, and fit

-13-

for its intended use.

88. Plaintiff, and her physicians, relied on the skill, judgment and representations of P&GP and Aventis.

89. ACTONEL did not conform to P&GP and Aventis' express warranties in that it was not safe and fit for its intended use because it caused serious adverse side effects, including osteonecrosis of the jaw.

90. As the proximate cause and result of P&GP and Aventis' breach of their express warranties, Plaintiff was injured.

## COUNT IV: BREACH OF IMPLIED WARRANTY

91. Plaintiff re-alleges paragraphs 1-90 above as if fully set forth herein.

92. Merck impliedly warranted to Plaintiff, her physicians, and the medical community that FOSAMAX was of merchantable quality and was safe and fit for its intended use.

93. Plaintiff and her physicians relied on Merck's skill and judgment.

94. FOSAMAX was not of merchantable quality or safe and fit for its intended use in that it caused serious adverse side effects, including osteonecrosis of the jaw.

95. As the proximate cause and result of Merck's breach of its implied warranties, Plaintiff was injured.

96. P&GP and Aventis impliedly warranted to Plaintiff, her physicians and the medical community, that ACTONEL was of merchantable quality and was safe and fit for its intended use.

-14-

97.    Plaintiff, and her physicians relied on P&GP and Aventis' skill and judgment.

98.    ACTONEL was not of merchantable quality or safe and fit for its intended use in that it caused serious adverse side effects, including severe personal injury to the jaw.

99.    As the proximate cause and result of P&GP and Aventis' breach of its implied warranties, Plaintiff was injured.

## COUNT V: FRAUDULENT MISREPRESENTATION

100.   Plaintiffs re-alleges paragraphs 1-99 above as if fully set forth herein.

101.   Merck made fraudulent misrepresentations with respect to FOSAMAX in the following particulars:

a. Merck represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that FOSAMAX had been tested and found to be safe and effective for the treatment of pain and inflammation; and

b. Merck represented that FOSAMAX was safer than other alternative medications.

102.   Merck knew that its representations were false, yet it willfully, wantonly, and recklessly disregarded its obligation to provide truthful representations regarding the safety and risk of FOSAMAX to consumers, including Plaintiff, her physicians and the medical community.

103.   The representations were made by Merck with the intent that doctors and patients, including Plaintiff and her doctors would rely upon them.

104.   Merck's representations were made with the intent of defrauding and deceiving

Plaintiff, other consumers, and the medical community to induce and encourage the sale of FOSAMAX.

105. Plaintiff Ronna Greene, Plaintiff's doctors, and others relied upon the representations.

106. Merck's fraudulent representations evinced its callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers, including Plaintiff.

107. As a direct and proximate result, Plaintiff Ronna Greene sustained osteonecrosis of the jaw. In addition, Plaintiff required and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

108. Merck's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Merck and deter it from similar conduct in the future.

109. P&GP and Aventis made fraudulent misrepresentations with respect to ACTONEL in the following particulars:

a. P&GP and Aventis represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that ACTONEL had been tested and found to be safe and effective for the treatment of pain and inflammation; and

b. P&GP and Aventis represented that ACTONEL was safer than other alternative medications.

110. P&GP and Aventis knew that its representations were false, yet it willfully, wantonly, and recklessly disregarded its obligation to provide truthful representations regarding the safety and risk of ACTONEL to consumers, including Plaintiff, her physicians and the medical community.

111. The representations were made by P&GP and Aventis with the intent that doctors and patients, including Plaintiff and her doctors would rely upon them.

112. P&GP's and Aventis' representations were made with the intent of defrauding and deceiving Plaintiff, other consumers, and the medical community to induce and encourage the sale of ACTONEL.

113. Plaintiff Ronna Greene, Plaintiff's doctors, and others relied upon the representations.

114. P&GP's and Aventis' fraudulent representations evinced its callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers, including

-17-

Plaintiff.

115.    As a direct and proximate result, Plaintiff Ronna Greene sustained osteonecrosis of

the jaw. In addition, Plaintiff required and will continue to require healthcare and

services. Plaintiff has incurred and will continue to incur medical and related

expenses. Plaintiff also has suffered and will continue to suffer diminished capacity

for the enjoyment of life, a diminished quality of life, increased risk of premature

death, aggravation of preexisting conditions and activation of latent conditions, and

other losses and damages. Plaintiff's direct medical losses and costs include care for

hospitalization, physician care, monitoring, treatment, medications, and supplies.

Plaintiff has incurred and will continue to incur mental and physical pain and

suffering and loss of wages and wage-earning capacity.

116.    P&GP's and Aventis' conduct as described above was committed with knowing,

conscious, wanton, willful, and deliberate disregard for the value of human life and

the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to

punitive damages so as to punish P&GP and Aventis and deter it from similar

conduct in the future.

## COUNT VI: FRAUDULENT CONCEALMENT

117.    Plaintiff re-alleges paragraphs 1-117 above as if fully set forth herein.

118.    Merck fraudulently concealed information with respect to FOSAMAX in the

following particulars:

a. Merck represented through its labeling, advertising, marketing materials, detail

-18-

persons, seminar presentations, publications, notice letters, and regulatory submissions that FOSAMAX was safe and fraudulently withheld and concealed information about the substantial risks of using FOSAMAX; and

b. Merck represented that FOSAMAX was safer than other alternative medications and fraudulently concealed information which demonstrated that FOSAMAX was not safer than alternatives available on the market.

119. Merck had sole access to material facts concerning the dangers and unreasonable risks of FOSAMAX.

120. The concealment of information by Merck about the risks of FOSAMAX was intentional, and the representations made by Merck were known by Merck to be false.

121. The concealment of information and the misrepresentations about FOSAMAX were made by Merck with the intent that doctors and patients, including Plaintiff, rely upon them.

122. Plaintiff Ronna Greene, Plaintiff's doctors, and others relied upon the representations and were unaware of the substantial dental and oral risks of FOSAMAX which Merck concealed from Plaintiff's doctors and Plaintiff.

123. As a direct and proximate result of Merck's fraudulent concealment and misrepresentation, Plaintiff Ronna Greene suffered osteonecrosis of the jaw and was caused to suffer severe and permanent injuries, including pain and mental and physical anguish and suffering, including a diminished capacity for the enjoyment of life, aggravation of preexisting conditions and activation of latent conditions, and a

-19-

fear of developing other harmful conditions or problems as a result of the injury. Plaintiff has suffered and will continue to suffer a loss of wages and wage-earning capacity and has incurred expense for medical care and treatment due to the injuries caused by FOSAMAX.

124.   Merck's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Merck and deter it from similar conduct in the future.

125.   P&GP and Aventis fraudulently concealed information with respect to ACTONEL in the following particulars:

a.  P&GP and Aventis represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that ACTONEL was safe and fraudulently withheld and concealed information about the substantial risks of using ACTONEL; and

b.  P&GP and Aventis represented that ACTONEL was safer than other alternative medications and fraudulently concealed information which demonstrated that ACTONEL was not safer than alternatives available on the market.

126.   P&GP and Aventis had sole access to material facts concerning the dangers and unreasonable risks of ACTONEL.

127.   The concealment of information by P&GP and Aventis about the risks of ACTONEL was intentional, and the representations made by P&GP and Aventis were known by

-20-

P&GP and Aventis to be false.

128. The concealment of information and the misrepresentations about ACTONEL were made by P&GP and Aventis with the intent that doctors and patients, including Plaintiff, rely upon them.

129. Plaintiff Ronna Greene, Plaintiff's doctors, and others relied upon the representations and were unaware of the substantial dental and oral risks of FOSAMAX which P&GP and Aventis concealed from Plaintiff's doctors and Plaintiff.

130. As a direct and proximate result of P&GP's and Aventis' fraudulent concealment and misrepresentation, Plaintiff Ronna Greene suffered osteonecrosis of the jaw and was caused to suffer severe and permanent injuries, including pain and mental and physical anguish and suffering, including a diminished capacity for the enjoyment of life, aggravation of preexisting conditions and activation of latent conditions, and a fear of developing other harmful conditions or problems as a result of the injury. Plaintiff has suffered and will continue to suffer a loss of wages and wage-earning capacity and has incurred expense for medical care and treatment due to the injuries caused by ACTONEL.

131. P&GP's and Aventis' conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish P&GP and Aventis and deter it from similar conduct in the future.

-21-

## COUNT VII: JOINT AND SEVERAL LIABILITY

132.  Plaintiff re-alleges paragraphs 1-131 above paragraphs as if fully set forth herein.

133.  By virtue of their individual and collective acts and omissions, Defendants are jointly

and severally liable to Plaintiff as such acts and omissions have proximately caused

Plaintiff to suffer a single indivisible injury for which each Defendant is responsible.

## GLOBAL PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

a. compensatory damages on each cause of action;

b. punitive damages on each cause of action;

c. reasonable attorneys' fees where recoverable;

d. costs of this action; and

e. such other additional and further relief as the Court may deem necessary,

appropriate, and just.

## VIII. **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all counts and issues so triable.

TIMOTHY M. O'BRIEN, ESQ.
MEGHAN M. TANS, ESQ.
316 South Baylen Street, Suite 600 (32502)
P. O. Box 12308
Pensacola, Florida 32591
(850) 435-7084
FAX (850) 435-7020
Attorney for Plaintiff


Of Counsel:

MICHAEL J. RYAN
Florida Bar No.: 975990
700 SE 3RD Ave Ste 100
Fort Lauderdale Florida 33316-1154
(954) 763-8181
FAX (954)763-8292
Attorney for Plaintiff

and

DAVID ENNIS
Florida Bar No.: 600600
110 E Broward Blvd Ste 1700
Fort Lauderdale Florida 33301-3500