**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------x
IN RE: FOSAMAX PRODUCTS LIABILITY   :      MDL No. 1789
LITIGATION                          :
_____x
This Document Relates to            :      1:09-cv-4061 (JFK)
                                    :
Myra Ward v. Merck & Co., Inc.,     :
and Mark Griffin, 1:09-cv-4061(JFK) :      OPINION & ORDER
                                    :
------------------------------------x
```

APPEARANCES:

    FOR THE PLAINTIFF MYRA WARD:

        Timothy M. O'Brien, Esq.
        Meghan Tans, Esq.
        Ned McWilliams, Esq.
        LEVIN PAPANTONIO THOMAS MITCHELL
        ESCHSNER & PROCTOR, P.A.

    FOR DEFENDANT MERCK & CO, INC.:

        Norman C. Kleinberg, Esq.
        Theodore V.H. Mayer, Esq.
        William J. Beausoleil, Esq.
        HUGHES HUBBARD & REED LLP

        Paul F. Strain, Esq.
        M. King Hill, III, Esq.
        David J. Heubeck, Esq.
        VENABLE LLP

**JOHN F. KEENAN, United States District Judge:**

## INTRODUCTION

        This action and hundreds of others in which plaintiffs allege to have developed osteonecrosis of the jaw from ingesting defendant Merck & Co., Inc.'s ("Merck") prescription

osteoporosis drug, Fosamax, have been consolidated before this Court for pretrial coordination.  Merck removed this case to federal court, contending that Plaintiff fraudulently joined defendant Mark Griffin in an effort to defeat federal diversity jurisdiction.  For the reasons that follow, Plaintiff's Motion to Remand is granted.

## BACKGROUND

On February 10, 2009, plaintiff Myra Ward, a resident of Florida, filed a complaint in the Circuit Court of Florida for the County of Escambia against Merck, a New Jersey corporation, and Mark Griffin, a Florida resident.  Plaintiff asserts claims of strict liability, negligence, and fraud.  At relevant times, Griffin was employed by Merck as a professional representative, in which his role was to "make physicians aware of the benefits and limitations of certain Merck medicines." (Def. Opp'n at 3.)  Griffin's responsibilities included, among other things, "visit[ing] physicians' and healthcare providers' offices and provid[ing] FDA-approved package inserts and other materials provided by Merck." (Id.)  The Complaint alleges that Griffin "misrepresented [the] safety and effectiveness of [Fosamax] and concealed or understated its dangerous side effects in order to increase [his] financial gain by way of salaries, bonuses, or other incentives." (Compl. at 3.)

2

On March 27, 2009, Merck removed the case to the United States District Court for the Northern District of Florida, despite the conceded non-diversity of plaintiff Ward and defendant Griffin. The case was ordered transferred to this MDL on April 24, 2009. Merck's notice of removal attached a signed declaration from Griffin, which provided details regarding his employment at Merck and involvement with Fosamax.

Plaintiff seeks remand based on the non-diversity of plaintiff Ward and defendant Griffin, both Florida citizens. Merck asserts that the non-diverse defendant Griffin was fraudulently joined in the action, so that his presence should be disregarded for the purpose of determining whether diversity jurisdiction exists. Merck argues that Plaintiff's "generalized," "non-specific," and "conculsory" allegations have no reasonable basis in fact or law upon which Griffin can be found personally and independently liable.

## DISCUSSION

Under the removal statute, defendants may remove an action from state court if it originally could have been brought in federal court. 28 U.S.C. § 1441(a). When removal is based on diversity jurisdiction, defendants must show that there is complete diversity of citizenship between plaintiffs and defendants and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. "In light of the congressional intent to

3

restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994) (citation omitted).

Even if complete diversity is destroyed by the presence of a non-diverse party, removal is nonetheless proper if that party was fraudulently joined in the action. The doctrine of fraudulent joinder prevents a plaintiff from joining a non-diverse defendant "with no real connection to the controversy" to defeat federal removal jurisdiction. Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 460-61 (2d Cir. 1998). If a defendant has been fraudulently joined, that defendant's citizenship is overlooked for the purpose of determining whether complete diversity exists.

One claiming fraudulent joinder in the Second Circuit "bears a heavy burden." Id. at 461. He "must demonstrate, by clear and convincing evidence, either that [1] there has been outright fraud committed in the plaintiff's pleadings, or [2] that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." Id. On the latter ground, "[j]oinder will be considered fraudulent when it is established that there can be no recovery [against the defendant] under the law of the

4

state on the cause alleged." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 207 (2d Cir. 2001) (internal quotation marks omitted, alteration in original).  Most courts in this district have applied the "no possibility" standard rather strictly.[1]  See, e.g., Dexter v. AC&S Inc., No. 02 Civ. 6522, 2003 WL 22725461, at *2 (S.D.N.Y. Nov. 18, 2003) (noting that "[r]ecent cases from this district have strictly applied the standard"); Stan Winston Creatures v. Toys "R" Us, Inc., 314 F. Supp. 2d 177, 183 (S.D.N.Y. 2003) (requiring defendants to show that it is "legally impossible" for plaintiff to recover); Nemazee v. Premier, Inc., 232 F. Supp. 2d 172, 178 (S.D.N.Y. 2002) ("Any possibility of recovery, even if slim, militates against a finding of fraudulent joinder; only where there is 'no possibility' of recovery is such a finding warranted.").  The court lends more lenient scrutiny to plaintiff's claims than it

---

[1] Merck cites In re Rezulin Prods. Liab. Litig., 133 F. Supp. 2d 272 (S.D.N.Y. 2001) for the proposition that the "no possibility" standard requires the defendant to show that there is "no reasonable possibility" of recovery or "no reasonable basis to predict liability." Id. at 280 n.4.  This Court previously has declined to adopt the more lenient standard: "Rezulin's interpretation of the 'no possibility' standard seems apt to the extent that it excludes the possibility of a state later reversing settled law or recognizing new, frivolous claims.  Insofar as Rezulin suggests a more lenient standard, I do not regard it as an accurate statement of the law in this circuit.  There is no reason to believe that the Court of Appeals 'inadvertently use[d] the language it did' when it articulated the fraudulent joinder standard." In re Fosamax Products Liability Litig., No. 06 MDL 1769, 2008 WL 2940560, at *3 (S.D.N.Y. July 29, 2008) (citing Arseneault v. Congoleum, No.

would if it were ruling on a motion to dismiss. See Sherman v. A.J. Pegno Constr. Corp., 528 F. Supp. 2d 320, 328-29 (S.D.N.Y. 2007); Kuperstein, 457 F. Supp. 2d at 471. "[A]ll factual and legal issues must be resolved in favor of the plaintiff." Pampillonia, 138 F.3d at 461.

In support of its motion to remand, Plaintiff points to the Florida intermediate appellate decision Albertson v. Richardson-Merrell, Inc., 441 So. 2d 1146 (Fla. Dist. Ct. App. 1983). Albertson involved a mother and her minor child who suffered birth defects as a result of ingesting the drug Bendectin during pregnancy. She sued the drug manufacturer and others, including an employee of the manufacturer who allegedly misrepresented material facts concerning the safety of the drug to the plaintiff's prescribing physician. The court in Albertson reversed the lower court's order to grant the defendant's motion to dismiss, holding that plaintiff could maintain a fraud claim based on the individual defendant's alleged misrepresentations to the plaintiff's physician. The court concluded that "the physician who prescribed the drug was acting on his patient's behalf; therefore a fraud upon the physician was a fraud upon the patient." Id. at 1150.

In light of Albertson, it is clear that there is at least a possibility that plaintiff can maintain a cause of action for

---

01 Civ. 10657 (LMM), 2002 WL 472256, at *5 n.4 (S.D.N.Y Mar. 26,

6

alleged misrepresentations to her prescribing physician under Florida law.  Merck argues, however, that there is no possibility that Griffin can be found personally liable.[2] Although "it is not sufficient to argue that that the complaint fails to state a claim" because it did not "adequately allege[] . . . participation and knowledge," Stan Winston Creatures, 314 F. Supp. 2d at 182, the Court may look beyond the pleadings to resolve this jurisdictional question. See Sherman, 528 F. Supp. 2d at 327 n.10.  Merck submitted a signed declaration from defendant Griffin, which states, among other things, that (1) he never provided "Fosamax or information concerning Fosamax directly to Myra Ward"; (2) he never sold or took orders for Fosamax; and (3) he "was not aware of any alleged association between Fosamax and osteonecrosis of the jaw during the time [he] worked for Merck beyond what was stated in the prescribing information and approved materials provided to [him] by Merck." (Griffin Decl. ¶¶ 2, 4, 6)  Plaintiff presented in her motion to remand her own evidence in an attempt to refute many of the statements in Griffin's declaration.

---

2002)).

[2] Under Florida law, corporate employees are personally liable for tortuous conduct of the corporation if they personally participated in the tort. See Home Loan Corp. v. Aza, 930 So. 2d 814, 816 (Fla. Dist. Ct. App. 2006) (holding that a corporate employee must have "participated in the wrong" to be found personally liable).

Merck contends that because of Griffin's lack of independent knowledge, there is no basis for personal liability against him under Florida Law.  Merck relies on Legg v. Wyeth, 428 F.3d 1317 (11th Cir. 2005).  In Legg, defendant's opposition to the motion to remand attached an affidavit from a defendant sales representative which stated that her "knowledge of the drugs [that she] detailed was derived exclusively from education provided . . . by Wyeth," that she was not expected to conduct independent research regarding the drugs, and that she "was not aware of any alleged association between [the drugs at issue] and [the alleged injury] until the time such an allegation was first publicized." Id. at 1321.  The court reversed the grant of remand, concluding there was no reasonable basis to predict that the state court would find the employee individually liable "in the absence of evidence that [the individual defendant] either knew or should have known of [the drug's] allegedly dangerous effects." Id. at 1325.  The court reasoned that even if Wyeth knew or should have known of the drug's harmful effects, "that might be a basis for a fraud claim against Wyeth, but it would not support the conclusion that [the individual defendant] personally participated in the tort or breached a duty to the Plaintiffs."[3] Id. at 1324(internal quotation omitted); see also

---

[3] The court in Legg was interpreting Alabama law which also requires "personal participation" in the tortuous conduct. See Turner v. Hayes, 719 So. 2d 1184, 1188 (Ala. Civ. App. 1997)

8

In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine), No. MDL 1203, 2004 WL 1824357, at *4 (E.D. Pa. Aug. 12, 2004) (finding sales representatives fraudulently joined because defendant "offered sworn testimony that [the sales representatives] had no knowledge of any connection" between the drug and the alleged injury).

Merck's reliance on Legg is not persuasive. Unlike Legg and related cases in which affidavits fully refuted plaintiff's claim that defendant knew or should have known of the drug's allegedly dangerous effects, Griffin's declaration only states that he was "not aware of any alleged association between Fosamax and osteonecrosis . . . beyond what was stated in the prescribing information and approved materials provided . . . by Merck." (Griffin Decl. ¶ 4). The source of the defendant's information regarding Fosamax is irrelevant to the determination of whether it is possible that he personally participated in the alleged fraud. Griffin did not declare that he had no knowledge of an alleged association between Fosamax and osteonecrosis and therefore Merck's reliance on Legg and similar cases is misguided. Even assuming arguendo that the evidence submitted by Plaintiff does not contradict Griffin's declaration, it is

---

("As a general rule, corporate employees are liable personally for the wrongful action of the company or its other employees only if they personally participate in the tort."), rev'd in part on other grounds sub nom, Ex parte Atmore Cmty. Hosp., 719 So. 2d 1190 (Ala. 1998).

9

entirely possible that, under Florida law, Griffin could be found personally liable for misrepresenting the information that he received from Merck regarding the safety of Fosamax. Merck has not satisfied its heavy burden of establishing that there is no possibility of recovery against defendant Griffin.

## CONCLUSION

For the foregoing reasons, the motion to remand filed by Myra Ward in 1:09-cv-4061 (JFK) is GRANTED. The case is REMANDED to the Circuit Court of Escambia County, State of Florida.

SO ORDERED.

Dated:     New York, New York
           September 28, 2008

                                    _____
                                    JOHN F. KEENAN
                                    United States District Judge